IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ESTATE CHIMNEY & FIREPLACE, LLC, | : : | CIVIL ACTION |
|       **Plaintiff,** | : : | |
| v. | : : | |
| IFG COMPANIES and BURLINGTON INSURANCE COMPANY, | : : : | No. 19-5374 |
|       **Defendants.** | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                **March 17, 2021**

      The Court is faced with an insurance coverage question about whether a duty to defend exists when the factual allegations of the underlying litigation involve claims of faulty workmanship. Estates[1] Chimney & Fireplace, LLC performed inspections and replaced the chase covers for numerous chimneys at the Huntingdon Brook Condominiums in Southampton, Pennsylvania. The chase covers are pieces of metal that fit over the chimney chase to keep environmental elements out. Some condo owners were not pleased with Estates Chimney's work, and they sued, claiming that their chimneys ceased working properly after the work had been performed. Estates Chimney had a Commercial General Liability insurance policy ("the Policy") with the Burlington Insurance Company. After Estates Chimney was named as a defendant in three separate lawsuits involving its work at the condos, it sought coverage from Burlington pursuant to the Policy. Burlington denied coverage and Estates Chimney filed this lawsuit, seeking a declaration that Burlington must defend and indemnify it against these three lawsuits. Both parties

---

[1] For those reading closely, the Court will address later in this Memorandum why the caption lists Plaintiff as "Estate Chimney", but throughout the Memorandum the Court refers to Plaintiff as "Estates Chimney".

have filed motions for summary judgment.² For the reasons that follow, the Court will grant Burlington's summary judgment motion and declare that Burlington owes Estates Chimney no duty to defend against the three lawsuits filed against it.

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party bears the burden of persuasion at trial, it must identify evidence in the record establishing the absence of a genuine factual issue. *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248.

In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk.*

---

² Pursuant to the Court's latest Scheduling Order, Burlington filed its motion to summary judgment on January 5, 2021. Plaintiff did not file a summary judgment motion at that time. On January 19, 2021, the Court granted an extension of time until February 2, 2021 for Plaintiff to answer Burlington's motion. On February 2, 2021, Plaintiff filed its answer and cross-motion for summary judgment. Plaintiff's cross-motion for summary judgment should have been filed on January 5, 2021.

*Comm'n*, 293 F.3d 655, 655 (3d Cir. 2002). A court must apply the same standards to cross-motions for summary judgment. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir, 2008).

## II.   DISCUSSION

The determinative question presented is clear. If the claims in the three underlying complaints arise from faulty workmanship that caused no personal injury or property damage to the property of a third-party, Burlington is entitled to a declaration that it owes no duty to defend or indemnify Estates Chimney. If, however, the factual allegations from the plaintiffs in the underlying lawsuits extend beyond faulty workmanship, or if the faulty workmanship caused damage beyond the work product itself, Burlington is not entitled to the declaration it seeks.

The Court will begin with the legal framework that it must use to determine whether Burlington has a duty to defend here. After laying out that framework, the Court will look at the language of the policy to define the scope of coverage under that policy and then compare the scope of that coverage to the allegations in the underlying complaints.

### A.   Pennsylvania Contract Interpretation

Under Pennsylvania law, interpretation of insurance contracts, including questions of coverage, is a question of law for the court. *401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). The ultimate aim is to ascertain the intent of the parties as expressed by the language of the contract. *See id*. The policy must be read as a whole and its meaning construed according to its plain language. *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999); *see also Giancristoforo v. Mission Gas & Oil Prods., Inc.*, 776 F. Supp. 1037, 1041 (E.D. Pa. 1991) ("The policy must be construed as a whole, not in discrete units.").

A court must enforce the clear and unambiguous language of the insurance policy. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999) (citing *Standard Venetian Blind Co.*

v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)). Moreover, a court should read the policy to avoid ambiguities and give effect to all of its provisions. Id.; see also Little v. MGIC Indem. Corp., 836 F.2d 789, 793 (3d Cir. 1987). If, however, the language of the policy is open to multiple interpretations, it is ambiguous and must be construed against the insurer as the drafter of the contract. Watkins, 198 F.3d at 103; see also Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999). The insured has the burden of proving facts that bring its claim within coverage, but the insurer bears the burden of proving that an exclusion or a limitation applies to disclaim coverage. Koppers Co. v. Aetna Cas. & Surety Co., 98 F.3d 1440, 1447 (3d Cir. 1996).

### B. The Duty to Defend

At issue here is the insurer's duty to defend, which is broader than the insurer's duty to indemnify. Frog, 193 F.3d at 746. The duty to defend is assessed by comparing the complaint to the policy. See Gene's Rest., Inc. v. Nationwide Ins. Co., 548 A.2d 246, 246-47 (Pa. 1988); United Servs. Auto Ass'n v. Elitzky, 517 A.2d 982, 985 (Pa. Super. Ct. 1986); see also Erie Ins. Exch. v. Costa Constr., LLC, No. 1516, 2015 WL 7111102, at *2 (Pa. Super. Ct. May 8, 2015) ("The obligation of an insurer to defend an action against the insured is fixed solely by the allegations in the underlying complaint."). The factual allegations in the underlying complaint must be taken as true and liberally construed in favor of the insured. Frog, 193 F.3d at 746 (citing Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992)). The duty to defend arises if "the allegations in the complaint . . . could potentially fall within the coverage of the policy." Victoria Ins. Co. v. Mincin Insulation Servs., Inc., Civ. A. No. 08-909, 2009 WL 2998144, at *2 (W.D. Pa. Sept. 15, 2009); see also Sphere Drake P.L.C. v. 101 Variety, Inc., 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999). This rule applies even when the lawsuit is "groundless, false, or fraudulent."

*Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649, 651 (Pa. Super. Ct. 1994); *see also D'Auria v. Zurich Ins. Co.*, 507 A.2d 857, 859 (Pa. Super. Ct. 1986) ("It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend."). When determining whether a complaint triggers coverage, the court focuses on the complaint's factual allegations, not the terminology used to name the causes of action. *Markel Int'l Ins. Co. v. 2421 Salam, Inc.*, Civ. A. Nos. 08-1052 & 08-2484, 2009 WL 1220557, at *2 (E.D. Pa. Mar. 31, 2009) (citing *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)).

    **C.**    **Scope of Coverage**

Having explained the ground rules for insurance contract interpretation and the insurance company's duty to defend, the Court will turn to the coverage dispute here. Ultimately, the Court must define the scope of the coverage under the insurance policy and then compare the scope of the coverage to the allegations of the underlying complaint. *See State Farm Fire & Cas. Co. v. Moreco Constr., Inc.*, 171 F. Supp. 3d 373, 377 (E.D. Pa. 2016).

Here, the Policy includes the following language:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have a right and duty to defend the insured against any 'suit' seeking those damages.
>
> b. This insurance applies to 'bodily injury' and 'property damage' only if:
> (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'.

(Def.'s Mot. for Summ. J Ex. 1 [Policy].) The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*)

Burlington's argument for disclaiming coverage here is simple: "Under Pennsylvania law, claims based upon faulty workmanship are not covered under a commercial general liability (CGL) policy." (Def.'s Br. in Supp. of Its Mot. for Summ. J. [Def.'s Br.] at 13.) According to Burlington, "all claims asserted against Estates Chimney & Fireplace, LLC in the Underlying Lawsuits stem from Estates Chimney & Fireplace, LLC's allegedly defective workmanship." (*Id*. at 14.) The insurance company also claims that the only damages asserted in the underlying lawsuits are expenses to remedy the deficiencies to the chimney caps that Estates Chimney installed. (*Id*. at 15.)

To determine the scope of coverage under the Policy, Burlington relies heavily on *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co.*, 908 A.2d 888 (Pa. 2006). In *Kvaerner*, the Pennsylvania Supreme Court considered the meaning of the word "occurrence," which that policy defined as "an accident, including continuous or repeated exposure to substantially the same or general harmful conditions." 908 A.2d at 897. Kvaerner had entered into an agreement with the Bethlehem Steel Corporation to design and construct a coke oven battery. *Id*. at 891. A number of problems were discovered with the coke oven battery, and Bethlehem Steel sued Kvaerner for breach of contract and breach of warranty. *Id*. Kvaerner notified its insurance carrier, which disclaimed coverage because the policy only covered property damage caused by an occurrence. *Id*. at 897. The court concluded that a claim reliant on faulty workmanship was not an occurrence under the insurance policy because there was no accident. *Id*. at 899. An accident requires a fortuitous event, which does not cover faulty workmanship. *Id*. at 898. Therefore, there was no duty to defend against a lawsuit that alleged only property damage from poor workmanship to the work product itself. *Id*. at 900.

It is not merely faulty workmanship that is not covered. "[F]orseeable acts which tend to exacerbate the damage, effect, or consequences caused *ab initio* by faulty workmanship also cannot be considered sufficiently fortuitous to constitute an 'occurrence' or 'accident' for the purposes of an occurrence-based CGL policy." *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 597 (3d Cir. 2009). To illustrate this point, Burlington also relies heavily on a recent case in which it was involved, *The Burlington Insurance Company v. Shelter Structures, Inc.*, Civ. A. No. 19-4857, 2020 WL 5292076 (E.D. Pa. Sept. 4, 2020). In that case, a Swiss company contracted with Shelter to design and construct a steel-frame, fabric-covered hangar to store an airship. *Id*. at *1. After construction was completed, the hangar was designed and built, but in 2019, it collapsed due to wind and destroyed the airship it housed. *Id*. The underlying breach of contract and negligence lawsuit alleged that the hangar had both design and construction defects. *Id*. At the time of the incident, Shelter had a commercial general liability policy with Burlington. Burlington denied coverage and sought a declaration that it had no duty to defend or indemnify.

The court concluded that no duty to defend existed because the underlying litigation alleged only faulty workmanship, and that allegations of faulty workmanship did not fit within the definition of "occurrence" to be covered under the insurance policy. *Id*. at *5. Because the underlying complaint contended that the hangar failed in winds far below what was required by the building code, "the failure of the hangar was the foreseeable result of the alleged faulty workmanship, which is not an occurrence under Pennsylvania law." *Id*. The court also rejected the insured's argument that an occurrence transpired because the property of a third-party was damaged. Regardless, the underlying complaint still had to allege that the damage was caused by an "occurrence" as defined by the insurance policy. *Id*. at *6.

Under Pennsylvania law, for an occurrence to trigger coverage under the policy, the underlying complaint must allege something besides faulty workmanship against a contractor or subcontractor. This is true even if the allegations are couched in terms of negligence, breach of contract, or breach of warranty. *See State Farm Fire & Cas. Co. v. Brighton Exteriors, Inc.*, Civ. A. No. 14-3987, 2015 WL 894419, at *5 (E.D. Pa. Mar. 2, 2015). If an occurrence triggers coverage, then a question arises as to the scope of coverage defined by "bodily injury" or "property damage." (Policy.) When faced with deciding the scope of coverage, an important factor is whether the faulty workmanship damaged the insured's product or the project on which the insured worked; damages to "other property completely distinct from and unconnected to the insured contract" may still be covered. *Id*. However, third-party property damage is insufficient—by itself—to trigger coverage in the absence of an occurrence, as defined by the Policy. *See Sapa Extrusions, Inc. v. Lib. Mut. Ins. Co.*, 939 F.3d 243, 256 (3d Cir. 2019).

Clearly, the scope of coverage under the Policy does not extend to faulty workmanship, regardless of the legal claims used to seek redress for that faulty workmanship. How far does the faulty workmanship limitation extend? The Pennsylvania Superior Court has recently recognized that coverage is not barred merely by "the fact that liability is based on failure to properly perform contractual duties . . . where the claim is for damage to property not supplied by the insured and unrelated to what the insured contracted to provide." *Pa. Mfrs. Indem. Co. v. Pottstown Indus. Complex LP*, 215 A. 3d 1010, 1015 (Pa. Super. Ct. 2019). Rather, a claim for damages from improper performance of contractual obligations is not an "occurrence" if "the only property damaged is the product or property that the insured supplied or on which it worked or the damages sought are for the insured's failure to deliver the product or perform the service it contracted to perform." *Id*.

Ultimately, what these cases demonstrate, is that for coverage to exist here, Plaintiff must be able to point to some unforeseeable, fortuitous event. It will not be enough for Plaintiff to merely show that the condo owners alleged damage to property beyond the chimney caps upon which it worked. If Estates Chimney caused foreseeable damage through its alleged faulty workmanship, those damages would still fail to come within the scope of the Policy because they were not alleged to have been caused by an "occurrence" as defined by the Policy.

The Court will now turn to the allegations in the underlying actions to determine whether a duty to defend exists here.

### D.     Allegations in the Underlying Actions

#### 1.     *Carboni Complaint*

Patricia and Frank Carboni filed a complaint against Estates Chimney and Fireplace seeking damages for breach of the Unfair Trade Practices and Consumer Protection Law and "breach of warranties of workman like construction." (Def.'s Mot. for Summ. J. Ex. 2 [Carboni Compl.].) The record includes no additional information about the Carboni's claims.

#### 2.     *Liggio Complaint*

Paul Liggio sued Estates Chimney & Fireplace and Association Management Consultants in the Bucks County Court of Common Pleas, asserting that "Defendants caused permanent damage to the chimney and fireplace system in his residence." (Def.'s Mot. for Summ. J. Ex. 3 [Liggio Compl.] ¶ 1.) Liggio's collective action asserts that Estates Chimney was hired to replace the chase covers for every chimney in the Huntingdon Brook Community. (*Id*. ¶¶ 8, 16.) Estates Chimney replaced the chimney caps to 231 residentials units in the Huntingdon Brook Community. (*Id*. ¶ 18.) "The work performed was sloppy and negligent." (*Id*. ¶ 19.) After completing the work, Estates Chimney noted that a large number of the chimney systems had

failed inspection and that all of those chimneys were unsafe and needed to be condemned because they were originally built in violation of code. (*Id.* ¶¶ 20-23.) Liggio sued Estates Chimney for breach of fiduciary duty, negligence, breach of implied warranty, violations of the Home Improvement Act and the UPTCPL for, among other things, failing to apply for and receive legal work permits, damaging property, and performing sloppy and defective work. (*Id.* ¶¶ 53, 59, 64-67, 70, 75.)

### 3. Toll Complaint

Bruce and Robert Toll similarly sued Estates Chimney, Association Management Consultants Corporation, as well as the Huntingdon Brook Community Association and its Board of Directors stemming from the work of Estates Chimney. According to the Toll Complaint, Estates Chimney was hired to replace the chase covers of the chimneys in homes at the Huntingdon Brook Development. (Def.'s Mot. for Summ. J. Ex. 4 [Toll Compl.] ¶ 17.) Apparently, there was a disagreement over whether work to the chimneys was necessary. (*Id.* ¶¶ 19-20.) Over the objection of residents, Estates Chimney "performed work on the Properties that involved replacing the chase covers and chimney caps of Plaintiffs' homes." (*Id.* ¶ 23.) After the work was completed however, issues with the chimneys were uncovered; those issues rendered the fireplaces unsafe to use and "the only solution available . . . was to board up the chimneys or install electric fireplaces." (*Id.* ¶¶ 25-26.) When a second company was hired to inspect the work of Estates Chimney, it determined that "the safety issues identified with the fireplace used were caused by Estates installing an improper chimney cap." (*Id.* ¶ 29.) The complaint further alleges that Estates Chimney failed to fix the issues and that as a result, the plaintiffs would be required to retain and pay third-parties to fix the chimney caps and chimneys. (*Id.* ¶¶ 32, 34, 36.) The replacement of the chimney caps led to the chimneys being inoperable. (*Id.* ¶ 49.) The plaintiffs

sued Estates Chimney for breach of contract for "improperly replacing the chimney caps." (*Id*. ¶ 43.) The complaint also includes claims for negligence "by planning for and performing the replacement of the chimney caps . . . after being informed that such replacement would not be Code compliant and would make them unsafe to operate." (*Id*. ¶ 48.) Finally, the plaintiffs sued Estates Chimney for alleged violation of the UTPCPL, breach of implied warranties, and trespass. The trespass claim against Estates Chimney alleges that the company was specifically prohibited from entering the plaintiffs' properties; nonetheless, Estates Chimney entered the properties without permission and replaced the chimney caps. (*Id*. ¶¶ 68-73.)

E. **Comparing Scope of Coverage to Allegations**

The dispute here is whether the factual allegations preclude coverage because the allegations are built upon nothing but faulty workmanship. The Court concludes that Burlington has no duty to defend given the record before it.

The Carboni complaint is rather sparse as it consists of a single paragraph. Nonetheless, the gravamen of the Carboni complaint is that faulty workmanship caused damage to the Carboni's property. There are no factual allegations that would support the inference that the damage was the result of a fortuitous event.

The Liggio and Toll complaints are significantly more detailed, and the Court's conclusion regarding the duty to defend is the same. According to the allegations in the underlying lawsuits, Estates Chimney performed sloppy work when replacing the chimney covers. It is foreseeable that faulty workmanship when capping chimneys could lead to damage to the chimney itself and ultimately render the fireplace unusable. Based on the current state of the law, the allegations that Estates Chimney improperly installed the chimney cap is not as an occurrence under the Policy, even if the actual chimney caps were not damaged. Because the damage to property was entirely

foreseeable based on the work that Estates Chimney was performing, there is no insurance coverage. Plaintiff does not point to any accident that allegedly occurred that led to damage. The factual allegations all stem from faulty workmanship. The law is clear in Pennsylvania that such allegations do not afford coverage under the language of the Policy.

Plaintiff takes issue with Defendant's characterization that the underlying lawsuits include claims only for defective work. Plaintiff notes that "defendant's own expert has opined the work performed by plaintiff was not defective. Further, both the Liggio and Toll Complaints contained claims for consequential damages. Thus, the basis of the denial was not supported by the record." (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. and In Supp. of Pl.'s Cross-Mot. for Summ. J. [Pl.'s Opp'n] at 5.) Plaintiff also notes that the underlying lawsuits here all involve "specific allegations of negligence." (*Id*. at 6.)

None of these arguments are availing. First, this Court must decide coverage issues based on the four corners of the complaint against the insured, not the opinion of an expert, even if that expert opined that Estates Chimney did quality work that complied with all laws and regulations. This is a coverage dispute, the outcome of which cannot be decided by extrinsic evidence that addresses the merits of the underlying claims. "In Pennsylvania, courts follow the 'four corners rule,' considering only the allegations in the complaint in the underlying action." *Northridge Vill., LP v. Travelers Indem. Co. of Conn.*, Civ. A. No. 15-1947, 2017 WL 3776621, at *5 (E.D. Pa. Aug. 31, 2017); *see also Lenick Constr., Inc. v. Selective Way Ins. Co.*, 737 F. App'x 92, 94 (3d Cir. 2018) ("We liberally construe and accept as true all factual allegations against the insured, but we may not stray outside the four corners of the complaint against the insured or consider extrinsic evidence.")

Second, the mere fact that the plaintiffs in the underlying litigation may have sought consequential damages does not mean that the factual allegations in the underlying complaint constituted an "occurrence." Rather, the holding in *Kvaerner* has been extended to the foreseeable results of the insured's faulty workmanship. *See Zurich Am. Ins. Co. v. Century Steel Erectors Co., L.P.*, Civ. A. No. 19-998, 2020 WL 2065465, at *10 (W.D. Pa. Apr. 14, 2020) ("Consequential damages are reasonably foreseeable. It is reasonably foreseeable that faulty workmanship on structural concrete could result in partial collapse of the garage.").

Third, it is the factual allegations, not the legal terminology used in the complaint, that determines whether a duty to defend arises. *See Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d at 598-99; *see also Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 231 (3d Cir. 2010) ("Faulty workmanship, even when cast as a negligence claim, does not constitute [a fortuitous event]; nor do natural and foreseeable events like rainfall."); *Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 694 (E.D. Pa. 2012).

The Court concludes that the allegations in the underlying lawsuits fail to include the required fortuitous event necessary to qualify as an "occurrence" under the Policy. All of the underlying lawsuits rely on Estates Chimney's purported faulty workmanship, regardless of the legal terminology used in the underlying lawsuits or the damages alleged. Accordingly, there is no "occurrence" as defined in the Policy, so there is no duty to defend.

Having determined that there is no duty to defend against the underlying lawsuits, there is no duty to indemnify either. *See Sapa Extrusions*, 939 F.3d at 250 ("[B]ecause the duty to defend is 'broader' than the duty to indemnify, if a court determines that the former does not exist, neither does the latter.").

### F. Is Estate Chimney the Proper Party?

Lastly, the Court will very briefly address Burlington's argument that Plaintiff is not an insured under the Policy because the name of the insured on the Policy is Estates Chimney & Fireplace, LLC, and the party sued in the three underlying lawsuit is Estates Chimney & Fireplace, LLC, but the caption here lists Plaintiff as Estate Chimney & Fireplace, LLC. (Def.'s Mem. at 20-22.) Defendant argues that because of a missing "s," Estate Chimney & Fireplace, LLC is not a named insured and it lacks standing to assert the rights of the true insured, Estates Chimney & Fireplace, LLC. *See* Def.'s Opp'n to Pl.'s Cross-Mot. for Summ. J. at 21 ("Here, the Named Insured . . . is 'Estates Chimney & Fireplace, LLC". The [Policies] were not issued to the Plaintiff, Estate Chimney & Fireplace, LLC. Further, the [Policies] do not reference Estate Chimney & Fireplace, LLC. As such, based on the plain language of the [Policies], the Plaintiff, Estate Chimney & Fireplace, LLC, the entity seeking coverage in this instant matter, is not an insured under the [Policies].).)

The Court believes that this is an argument about nothing. The Court trusts that the parties have not wasted over a year in litigation—as well as judicial resources—unsure of what entity is actually insured. Moreover, as Burlington notes, the record is clear from Plaintiff's discovery responses that the entity seeking coverage is Estates Chimney & Fireplace, LLC. Burlington cannot escape a legal duty over a missing "s".

Burlington's argument is reminiscent of a famous *Seinfeld* episode. George Costanza tried to avoid losing at Trivial Pursuit to the Bubble Boy by noting that the Trivial Pursuit card included a typo. When the Bubble Boy answered what should have been the victory-clinching final question of the game that it was the Moors who invaded Spain in the Eighth Century, George responded, "I'm sorry, the card says Moops." But of course, the Bubble Boy had it right: "there's

no Moops." (*Id.*) This may burst Burlington's bubble, but its argument about the proper insured is itself a trivial pursuit best described as "a little out there."[3]

### III.     CONCLUSION

The Court concludes that Burlington owes Estates Chimney no duty to defend or to indemnify it against the three underlying lawsuits.[4] Defendant's motion for summary judgment is therefore granted and Plaintiff's is denied. An Order consistent with this Memorandum will be docketed separately.

---

[3] Of course, the Court cannot explain why, throughout this entire litigation, Plaintiff did not take fifteen minutes to amend the caption.

[4] The Court expresses no opinion on the merits of any of the underlying cases filed against Estates Chimney. This Memorandum only addresses the coverage issue before it.